On March 13, the morning call, 211-858, SWY v. BT McHenry, LLC, at all, on behalf of the Appellant, Mr. James E. Tutai, on behalf of BT McHenry, LLC, Mr. Anthony J. Rizzobato, on behalf of the City of McHenry, Ms. Erika G. Valdenaga, and on behalf of PM Enterprises of Illinois, Mr. Paolo Ruiz. Good morning, Counsel. Mr. Tutai, you may approach. Good morning, Your Honors. James Tutai, on behalf of the Appellant, on behalf of SWY. Your Honors, this case is really about direct evidence, reasonable inferences that can be drawn from direct evidence, circumstantial evidence, and, of course, proximate cause. Initially, I must apologize to the Justices. As I was going through my brief, I realized in preparation for today's argument, I got kind of caught up in the reasoning of the trial court and really got off on a tangent about circumstantial evidence and how I was arguing to your Justices about circumstantial evidence, that this case was more about circumstantial evidence. It's really not. It's about direct evidence. Well, how is it about direct evidence? Is there any direct evidence concerning or connecting the pothole to plaintiff's fault? Lynn Zweig's testimony. Well, how does her testimony specifically connect the pothole to the fault? Her testimony, which she is unopposed upon, and no one I don't think can test this. She is very clear, and she repeats this four, five, six, seven times in her deposition every time she gets an opportunity. She was attempting to maneuver around this pothole at the time her wheelchair fell over. How does that establish, though, that the wheelchair made contact with the pothole? She may have been attempting to do that, but where is the specific evidence that that's what happened? That's not necessary, Your Honor. This was a situation where there was no eyewitnesses, and Lynn Zweig was found laying on the side of the road or laying on the driveway next to the pothole with her wheelchair tipped over. Then the question becomes, wow, is there circumstantial evidence that we can connect this pothole to this wheelchair? Well, that's the situation we have here. There's nobody who saw her hit the pothole or an edge of the wheel go into the pothole. She herself said she didn't see that, so we don't have anyone else who knows what happened, who observed what happened. And there needn't be. Her testimony alone is enough to create a question back to the jury. She told us she didn't know what happened. And, well, she said, and this basically gets almost to, you know, almost opinion testimony, that she did not directly see her wheel go and come into physical contact with the pothole. The gist of her testimony is basically that's her opinion. That's her conclusion as to what happened. And the image I tried to present to the trial judge, Your Honor, is that if I may, I'll do the same thing for you. If I'm hearing a general argument and there's a huge hole here on the floor, and in the course of argument, I see the hole, I try to avoid it, I step over it, never come into physical contact with it, but in the course of doing so, I lose my balance, fall and break my ankle, that hole is approximately the cause of my fall, whether I came into physical contact with it or not. No, I actually understand your point, okay, and you're saying there should be a reasonable inference there, but I know, and I'm going to speak for the other side, you're going to get this response, aha, that's all well and good, and perhaps in the absence of any eyewitnesses or contradictory evidence or admissions, it might carry the day, except you have the police officer testifying to the point of told him she fell after the wheelchair hit the curb. You have a paramedic saying she made a bad turn, so doesn't that undercut your inference when you have direct admissions by the plaintiff? It doesn't undercut my inference. It undercuts Lynn Swagg's credibility and the weight that a jury should give to her testimony. Her testimony is admissible testimony. The jury is going to hear testimony from the police officer, from the paramedics, they're going to see the photographs, they're going to make the decision as, okay, do we believe Lynn Swagg, who's the only eyewitness, or are we going to believe these other police officers and paramedics? That's what the jury, that's the jury's job. Lynn Swagg, allegedly according to the paramedic and police officer, made the admissions that taken in context would clearly indicate she didn't make contact with the pothole. An officer testified she fell if her wheelchair hit the curb. How is that an inference that would weigh in her favor? It doesn't, Your Honor. And you can have competing inferences. You have, and I mentioned this in my brief, there's four, five, six inferences that can be drawn from this evidence. A couple are adverse to Lynn, a couple are adverse to the defendants. That's what a jury's job is. But if the plaintiff gets on the stand and says, I fell because my wheelchair hit a curb, what would there be to try? Where is the genuine issue of material fact? Her statements at the police officer are not an admission. They're not a binding judicial admission. They come into evidence as an exception to the hearsay rule, as a statement against her interest, but it's not a binding judicial admission. If she said in her deposition, oh, my wheelchair hit the curb, or my wheelchair did this, or my wheelchair did that, or this pothole had nothing to do with the accident, that's a binding judicial admission in some sense, and I think her judgment would be appropriate. But that's not what she says here, Your Honor. You know, her testimony is very clear. And again, another example, you're driving down the street, and there's a car, disabled car in the middle of the road. There's a big pothole in the middle of the road. There's a child, a pedestrian, sitting in the road or standing in the road. You swerve to avoid this, and an accident occurs. You never come into physical contact with the defect, the car, the child, but certainly those are approximate cause of your accident, the reason why you ran your car into the street. Well, wouldn't she be able to testify that's the reason, because you swerved around it? There's no gap to be filled in. And here, the plaintiff never really said what caused the fall. She says, I fell as I was attempting to avoid the pothole. She says that more than once. Very clearly. That's the gist of her testimony. So you're not saying that it was the pothole that caused her to fall. You're saying that her maneuvering around the pothole caused her to fall. That's your position. As we know from the IP Act, 1501, a cause, they used to say any cause, but now they clarify, a cause. It doesn't have to be the sole approximate cause. The cause of this accident, based upon her testimony, one of the inferences that can be drawn, reasonable inferences that a jury can draw, is that it was her attempts to maneuver around the pothole which caused her wheelchair to fall. So what authority supports your position that a defendant may be liable for a dangerous condition with which the plaintiff never actually came in contact? What case law is there that supports this? The cases cited in my briefs, Your Honor, and the cases on this subject, the way I analyze it, basically come into two categories. If there's a situation where there's direct testimony from a plaintiff saying this is the defect, this is what caused my accident, that's enough to defeat sound judgment to sustain a verdict. There's the other group of cases where because the plaintiff either is dead or disabled and can't testify, those are the cases where the court requires this evidence of physical contact between the alleged defect and the plaintiff. Cases where they slipped on water, the gentleman, he slips on ice, hits his head, he's in a coma, and then he dies. He's fouling on top of the ice, and from there the court says because it's physical contact, evidence of physical contact, that's enough, that's an adverse inference to the defendant that can defeat sound judgment. Did you argue this in the trial court? I did, Your Honor. I did. You argued that maneuvering around was the proxy. Absolutely. Not the hitting of power. Absolutely. And in fact, if you look at the transcript, you know, Judge Meyer talked about And I think Kimber was the most miscited case by the trial courts in Illinois. And then I asked him, you know, because he said, well, there's no physical contact. And I said, okay, Judge, and I just want to make sure. I said, so you're saying that because there's no evidence, she came into physical contact with the pothole that she loses. And he said, no, and that's not really what I meant. And then he clarified it. That's exactly what I argued in the trial court. I gave the same example I gave Your So you're not arguing that she came in contact with the hole? Her testimony. She gives the opinion. Yeah. My back wheel came into contact. It must have. Now, is that opinion based upon a reasonable degree of certainty? I don't know. That's a separate issue. That's an issue as to whether that testimony would ever be a misinvolvement in a trial court. I don't need that in my contention. But counsel, she certainly she said, I gather my wheel on the wheelchair, hit the edge of the pothole and threw it out. She didn't offer an opinion. I mean, saying I gather is much more like speculation, isn't it? Well, she said, I don't recall exactly what happened. I supposedly was thrown out of the wheelchair as it was rolling down the street. The wheel must have hit and I flipped out. That's that's very different than giving an opinion. This is what happened. I don't see. How does that constitute direct evidence? The direct evidence is she's attempting. She sees the pothole. She's attempting to move around it at the time she falls over. Whether she fell over because her wheelchair became unbalanced because she was making she had to make a tight turn. Whether her wheelchair became unbalanced because the wheel came in physical contact with the pothole. I don't think I need that for someone to defeat a summary judgment. But now, why is Kimbrough not applicable here? Kimbrough, five or six times in the decision, it's cited in her testimony, say, I don't know what caused me to fall. So then the court really what the court does is go on and then try and do an analysis of circumstantial evidence. OK, let's give her the benefit of the doubt. She doesn't know what she felt, but there's a grease hole here. That's right. And the court found no causal connection. Because there was no circumstantial evidence that she ever came into physical contact with that grease hole. I see what you're saying. In Kimbrough, the plaintiff could not positively identify any dangerous condition. Absolutely. You're saying here the plaintiff identified the pothole as the reason she was in the pothole. And her efforts to maneuver around it, which is what caused her fall. So if in Kimbrough, the plaintiff had testified, I saw the grease spot and I was walking around the grease spot to avoid it, and I tripped over my own feet, the grease spot would have been the proximate cause of her injury. I was going with you until you said I tripped over my own feet. Maybe that became unbalanced. Yes, I think that is a different fact that I heard. And actually this kind of ties into one of the arguments that the defendant made. The city's argument that this is really an open and obvious conditional case. It is. It is open and obvious. She saw it. She testified she saw it. And it's her efforts to get around it, to maneuver around it, is what caused her wheelchair to become unbalanced and fall. And you have cases cited in your brief that say the defense may be found negligent for defective condition, as may have been asked earlier, where the plaintiff is trying to avoid the condition, but the plaintiff has no direct contact. You have cases that specifically stand for that proposition. I looked for some, Your Honor, and I was looking for a case. I figured there had to be a case out there where someone is driving and avoiding a pothole. You've given us examples. Yeah, yeah. A whole bunch of examples. Does the case law support those examples? I'm pausing because you said cases where they're trying to avoid it. There's cases where, again, because the person is dead or disabled and unable to provide testimony, the court then does a circumstantial analysis. I don't think that's necessary here because we haven't heard direct testimony. I understand. I'm talking about the legal proposition. I understand the argument. It seems to have shifted a little bit. I think at first we had the impression that, you know, you were arguing that the wheelchair made direct contact with the pothole. You're saying that's not your theory of recovery, whether you argue that the lower court becomes a separate issue. You're saying the theory is you have a defective dangerous condition. She was injured trying to maneuver around the defective dangerous condition. So where is the case law that says that the defendant is responsible for that? Simply because there was a hole that she was trying to get about. I did not find a case that says that directly, Your Honor, because I don't think that that issue has ever been addressed respectfully. Again, because in those situations, it's usually plaintiff's testimony alone is sufficient. This is the defect. I was attempting to avoid it. But where's the bridge? Where's the duty? Where's the bridge of the duty here? You know, I suppose you could be saying that if somebody, you know, one village, you know, shovels the snow on one side of the street in the effort to go around it, the snow's on one side of the street, the plaintiff falls on the clear side of the street. Your theory is, hey, if they had shoveled the snow across the street, she wouldn't have gone over to the other side and wouldn't have fallen in the first place. Well, if she's crossing the street and she encounters a defective condition and is injured by the defective condition, I think that's a different fact pattern. You know, what's unique about it, and I think the facts are a little bit unique, Your Honor, by virtue of the fact we have a pothole that's right in front of a wheelchair ramp for a public sidewalk. And we have an individual who's in a wheelchair trying to access that public sidewalk. And while doing so, she sees a defect, she's trying to avoid it, and her wheelchair, she falls over. And again, you did argue this theory before the trial, correct? Absolutely. Now, without diminishing the seriousness of what happened, she did maneuver around this pothole several other times, though, correct? There's testimony of at least one other occasion. One other occasion she had gone from her house to the same store. Well, at least one. So once there, once back, that's one, two. And then on the day of the accident, she was there and back. The issue is, though, Your Honor, on that other occasion where she went to the store, the defense needs you to assume that the conditions on this other occasion were exactly the same as the conditions on the day of this accident, and there's no evidence of that one way or the other. Okay, you'll have time to reply. Counsel, thank you. Thank you, Your Honor. Thank you. Who is going to be arguing first among the three of you? And Mr. Good morning, Your Honors. My name is Howard Rigsby. I will be arguing the issue of proximate cause. Mr. Retrovato will argue the issue with regard to ownership of the property, and Ms. Baldonado will argue the issue with regard to open and obvious condition. Thank you. We each plan to divide our time equally. I'm not sure if you're aware. Five minutes. Okay. Did I pull it off? No, we have our time. I wasn't sure if you were five minutes. We have our time. But as long as you're aware, I can get your points in during that time. With regard to the issue, you're right off the bat on this issue of if you're avoiding something and then you sustain an injury, then that condition, that defective condition, is the proximate cause of your injury. Well, like Mr. Tutaj, I found no cases that supported that proposition. On my way to court this morning, I stopped to buy gas, and as I finished up, there was a boat trailer and a car blocking the easiest exit of the gas station. So I had to either turn around and go to my left or go all the way around to the back of the gas station to get out. Had I had some type of an incident en route on either of these conditions, I do not believe I could blame it on the boat. I chose an alternate on my own, and I would take the consequences of whatever happened. In this situation, there were a number of alternative ways for this lady to avoid the pothole. She came down from the parking lot at a slope, and while there's no testimony that she was going very quickly, she reached that pothole, a pothole she had maneuvered around earlier that day and had passed probably twice before that summer. It was four times before. She could have made a wider turn. She could have gone another way. She, for some reason or another, chose apparently to make a tight turn, and whether she hit the curb or she just lost control of her wheelchair, we don't know. What we do know is she did not hit that pothole. Counsel, a special question. Did the opposing counsel make that, argue that theory of recovery before the trial court? In all fairness? In the trial court, my understanding was the argument was based on whether or not there was contact with the pothole. I did not argue in the trial court. I certainly have gone through the transcript. My understanding was it was based solely on an absence of contact. I think if you review the briefs of all the police, nobody really got into that issue of the maneuver. There are no cases cited on the issue of the maneuver, and I'm not sure plaintiffs really went into the issue of the maneuver or causing the maneuver as the cause of the accident. From the evidence, can't we really allow the reasonable inference that the wheelchair actually hit the pothole from the proximity of, if we look at the proximity of that pothole to the wheelchair ramp itself? Well, we don't really know the proximity. We know the proximity of the pothole in relationship to the rest of the sidewalk and the ramp. We don't know the proximity of the wheelchair in relation to the pothole. You may recall in the record the plaintiff testified she didn't have a measuring stick, somewhat sarcastic. Well, I didn't have a measuring stick, so she didn't know how far she was from the pothole at the time of the fall. She actually had no real recollection of the fall until she woke up, so we don't know how close she ever got. She saw a pothole. She knew the pothole was there from prior experience, but we really have no idea as to exactly how close she may have gotten to that. She may have come down in the middle of the apron and swerved around and hit the curtain and gone over. Again, she could have just lost control of her wheelchair. We have no idea, but we certainly don't know how close she ever got to it. And as I believe one of your honors pointed out when counsel was arguing, there's not a single case that would allow a recovery under this scenario where there was no contact between the plaintiff and the allegedly defective condition. Every single case that has been cited by either side, there was contact between the claimant or the plaintiff and the defective condition. In one case, there was no direct testimony, but a lady was found on the ground with an antenna wire wrapped around her legs, and the court found that it was reasonable to infer that she had gotten caught in this wire and fallen off a deck, on the second floor deck. The case in the Wagner case, which came out of this court and was probably the closest to this situation but going the other way, there was clear evidence that this lady, or a clear inference that this lady fell in the water. Her dress was wet, one witness saw water and blood on the floor, her husband saw water surrounding her. There was evidence of contact. In this one, we have absolutely no evidence of contact. That plot hole was sitting there, she may have come within an inch of it, she may have come within a yard of it, she may have missed it by three yards, she could have gone the other way, we have no idea. The only thing we have is her supposition, and she says things like, I gather, I suppose, I believe. Okay, if I can interrupt you, I know you don't have a lot of time. Sure. Do you agree with counsel that Kimbrough is distinguishable? No, I think Kimbrough is exactly on point. Why? It was the same situation. There is an alleged defect in the area where the accident occurred. There was no evidence whatsoever connecting Ms. Kimbrough to the defect. There was no grease on her shoes, there was no smudging in the grease spot. It was just a defective condition that existed somewhere in the area where she fell. He's saying he should be able to recover without having any contact with the defective condition. I'm sorry? He's saying he should be entitled to recover even though there was no contact with the defective condition. Well, if we assume that's true and I don't, there should be some line. Is it if you're within two feet of the defect, do you recover? Do you have to be within an inch of the defect? We have no idea how close she was to this defect, so I don't even think if we follow that type of thinking, that we can find proximate cause in this situation because she herself said she didn't have a measuring stick. She has no idea how close she was. Okay. Thank you, counsel. Mr. Retrovato will speak, please. This is the court, counsel. My name is Anthony Retrovato, and I represent Appley B.T. McHenry. I'm here to talk about the issue of ownership and the fact that B.T. McHenry is asking this court to affirm the lower court's judgment, not only based upon its ruling on the proximate cause issue but also based upon the fact that B.T. McHenry, there's evidence in the record that would support an affirmance of summary judgment in its favor because B.T. McHenry did not own, control, or maintain the property in question. Okay. Well, the record is unclear as to that. Although if you go by Mr. Gamble's testimony, which is the only testimony on ownership of the property in question, Mr. Gamble points to ownership of the property as being the city of McHenry. But in July of 2010, B.T. McHenry filed a motion for summary judgment asserting that it did not own, maintain, or was responsible in any way for the area where the plaintiff fell. And that has not been contradicted in the record? That has not been contradicted. We filed our affidavit of Mr. Gamble in July of 2010. Mr. Gamble was deposed in October of 2010. Mr. Gamble is a property attorney, handles property transactions for BET Investments, which is the member, the main member of B.T. McHenry. But now he certainly wasn't a land surveyor. No, Your Honor, and I'm glad you bring that up because that's what counsel argues, that he wasn't a surveyor. And we agree he's not a licensed surveyor. But licensed surveyors do things, they do things that other people can't do. The licensed surveyors go out and make their observations in the field and put it down on the paper with the intent of other people relying upon those surveys. And that's exactly what happened here. We have a licensed surveyor who prepared a survey of the property pursuant to Illinois law. It was certified by the surveyor, and it's relied upon by all kinds of people for all kinds of reasons, not only for closings, but in this case, Mr. Gamble, he testified that he relies upon surveys for closings to see if there's any encumbrances, to make sure that the structures that they think they are buying are on the actual property, that he relies upon surveys and looking at them to determine maintenance responsibilities, like if anyone here has ever had a fence put on their property, usually the fencing contractor wants to look at your survey to determine where they can put the fence to make sure it's on your property. Just because he's not a surveyor doesn't mean that he shouldn't be allowed to offer up testimony on issues that he covers every day as part of his job. Well, don't we at least, doesn't this at least raise the issue of a genuine material fact? Or if that doesn't, what about the city's counterclaim, the city's contention that BT owned the property, and wouldn't that raise a material issue of fact? Well, we're at the summary judgment stage, so you cannot defeat sworn testimony with mere allegations. Plaintiff had over one year to file anything, to file something that contradicted Mr. Gamble's testimony, and he never did. At Mr. Gamble's deposition, counsel questioned him about whether there were conflicting surveys or what if there was a survey that showed something different. But there has never been any survey that's been introduced as part of the record that contradicts what Mr. Gamble's testimony is on the subject. Mr. Gamble testifies that the area where she fell, the area where this pothole was located, is just south of its property line. If you look at the pictures that are in Plaintiff's or the appellant's brief, you see a pedestal which almost is right alongside the sidewalk. And Mr. Gamble testifies that the property line is just south of the pedestal, but just north of the sidewalk, the northern edge of the sidewalk where the plaintiff fell. So that would mean that she fell a number of feet south of our property line. There has been absolutely no testimony anywhere that contradicts it. Plaintiff points to a request to admit that contains documents that contradicts his testimony, but there are no documents in there. If you look at our responses to the request to admit, we deny ownership. We continually deny ownership in that request to admit. We deny that we own the property where the pothole was located. And there's nothing contradictory in the record. Plaintiff doesn't even offer up any legal argument in support of why Gamble's testimony shouldn't be considered. Plaintiff just argues he's not a land surveyor, therefore his testimony shouldn't be considered. But plaintiff doesn't offer up what the legal standards are that are required for us to analyze his testimony. Just says, well, you know, I've got no one to contradict it, and I don't think his testimony carries enough weight to be credible, and as a result we should discard it and not consider it. Did the city dismiss the counterclaim? No, that's still pending. How do we have jurisdiction over this case? Well, the whole case, summary judgment, was entered in favor of all of the defendants, which made the counterclaim moot. Okay. So if I may have another minute, because this is on the issue. To address what, counsel? Pardon me? To address what? To address something that none of us were prepared to address, and that was the argument that avoiding the pothole can lead to liability, because I didn't look through the record while counsel was arguing that, and in the record on pages 812 and 813 of the appendix, this specific issue was addressed by plaintiff's counsel and the court, and at the bottom of page 812, the trial court indicates, well, she is, I'll grant you that. It's clear that she sees the pothole and she says she's repeatedly trying to maneuver around it, and someone says yes, and then the court says, but I don't see how that forms a basis for liability, and then a couple lines down, plaintiff's counsel, no, I agree, judge, and I agree with that. So in other words, the trial court said that I don't see how walking around a pothole resulting in someone falling can lead to liability, and then counsel agreed with the trial court's statement, which, in my opinion, under Illinois appellate procedure would mean that they waived that argument. So I think that argument, which is brand new to all of us today, was waived by the colloquy between the trial court and plaintiff's counsel contained in the record, and I really appreciate giving me the extra couple minutes to talk about that. Thank you. And I ask that judgment be entered in favor of my client based upon an approximate cause and the fact that we didn't own or control the property in question. Thank you, counsel. Ms. Baldonado. If it's okay, I'd like to stand here because I'm kind of short, and I feel like I'm going to be obstructed by this podium a little bit. Okay, well, if you speak loudly enough and we can hear you, that's fine. Okay. Erica Baldonado on behalf of the city of McHenry, and we would be asking this court to not only affirm the lower court's award of summary judgment based on approximate cause, but also based on the open and obvious doctrine. We would ask this court to find that the deliberate encounter exception does not apply to this case. I think it was conceded by plaintiff's counsel during his argument before the justices that the pothole was open and obvious, that plaintiff had observed it on at least two if not three prior occasions and was successful in avoiding it. However, plaintiff wants this court to believe that she had to deliberately encounter this pothole to go shopping at Sears and then come back. The city of McHenry's position is that she did not need to deliberately encounter this pothole. There is a body of case law that says that if there is a safer alternate path, then the deliberate encounter exception does not apply. Well, what was the safer path? We're talking about a street that's right near there and a driveway. That's right, Your Honor. The safer alternate path would have been to travel down the driveway more towards the middle instead of off to the south, and then to have made a wider turn around the pothole, which you can see in Plaintiff's Exhibit No. 2 in her brief, at most would obstruct a quarter or only halfway of the width of the sidewalk. Well, but the middle is where cars would be. I mean, if you're off to the side, maybe you'd have more of an opportunity to avoid cars in that driveway. Isn't that correct? So how would that be safer, if she traveled down the middle? Well, if she's driving down the middle of the driveway and certainly there's a car behind her, that would not be safer. I don't know if there's any testimony if there was a car behind her which required her to travel along the side of the driveway. Our argument is not only were we driving down or wheeling down the middle of the driveway, because there's no evidence that there was a car, of course we would drive over to the side, and then traveling past the pothole, so continuing in a south direction, and then turning onto the sidewalk west of the pothole would have given her a safer alternate path. Was there an opportunity for her to get from the shopping center to the sidewalk without going on the driveway? I don't believe so. I don't think there's testimony about that. I think typically when she went to the shopping center, this is the route that she would take. And I think it bears emphasis that Plaintiff has taken this route before. Plaintiff has taken this route before without incident. Plaintiff is fully aware that there is a pothole, and no one is contesting the existence of this pothole. But I think the pictures speak a thousand words in this case, and what you're looking at in Plaintiff's Exhibit No. 2 is that the pothole is located next to the curb, which does have a handicap accessible ramp, but the pothole itself does not obstruct the entire width of the sidewalk. There is a safer alternate path, and that would be to the south of the pothole. There is nothing that required the Plaintiff to travel directly towards the pothole and then to make any basic maneuver around it. She could have traveled a little bit further west of the pothole, not necessarily then in the middle of the driveway, but west of the pothole, south of the pothole, and then accessed the handicapped sidewalk. It would not have placed her on McCollum Road. You mean the ramp that goes onto the sidewalk? Yes, Your Honor. The handicapped ramp, which is sloped down, would have allowed her to access the public sidewalk without entering McCollum Road. And so allowing her to be more towards the side of the driveway. So you're saying the evidence is there was enough room to maneuver, supposedly, around the pothole to access that wheelchair ramp to get her onto the sidewalk. She wouldn't have gone directly into the curb. Oh, absolutely. I think the photographic evidence indicates that. And in Plaintiff's Exhibit No. 2, it shows, again, that the pothole that she's claiming she was forced to maneuver around does not obstruct the entire width of the sidewalk. What I would say, half at most, if not only a quarter of the sidewalk. And I think a case that is very compelling is the Bonavia case versus Rockford. And that was a case in which the plaintiff was attempting to get to his boat, which was docked at a park district. And the plaintiff had actually gotten onto his boat two or three times that morning. And on the third time, the last time he tried to access his boat, he had slipped on algae on a boat launch and had fallen. And the plaintiff acknowledged in that case that the algae on the boat launch was open and obvious, but attempted to convince the court that it was a deliberate encounter, that he needed to access that boat launch in order to get to his boat. And the court found in that case, because there was an alternate, safer path, because the vegetation on the step next to the boat launch did not completely obscure that step, there was a safer alternate path, and the plaintiff voluntarily assumed that risk. And in this case, Your Honor, although it is a regrettable accident, and the plaintiff has maneuvered around this pothole before, she assumed the risk by traveling directly towards a pothole that she was aware of and then attempting to maneuver around it when she could have gone west of the pothole  The open and obvious doctrine would not relieve the city of a duty to keep the sidewalk safe, would it? Absolutely. You are right. And there is no issue in this case that there's anything defective with the sidewalk itself. Well, I'm talking about that area. Let's say the city has control over that area where the pothole is. Okay. I mean, the open and obvious doctrine, they can't just leave the pothole there indefinitely. They have to do something about it now that they know about it, correct? I mean, they're still on duty to maintain that area in a safe condition if the city owns that area and has control over that area, correct? Yes. Thank you. Thank you. Mr. Tutai, you have the opportunity to reply. Counsel, let me just put you on the spot, but what about the threshold question? Opposing counsel has referred to a page, a paragraph in the transcript that conceded that this doctrine of the accident occurred when she was trying to move around the pothole would not allow recovery. I disagree, Your Honor. I think what he's referring to, I think he's saying at age 13, Judge Meyer was commenting about how he was focusing on the Kimbrough issue and not focusing on the property ownership issue in his decision. And that's what I agreed with. The property ownership issue, not the negligence issue? I'm sorry, what? The property ownership issue, not the negligence issue? That's right. Judge Meyer was saying, because you read the transcript, and in the court order granted in motion for summary judgment, he relies upon the Kimbrough, and that's what he focused on. And then he commented a couple of times in the argument, I didn't focus on the property. And that's what I was agreeing with. Yes, because if he had granted summary judgment on the property issue, to a certain extent, that would eliminate some of these issues on the proximate cause. And I would just mention page A-8 and A-12 and A-16 as places where I argued this issue about avoiding the pothole as a basis for a proximate cause. Your Honor, I was thinking about your question to me about case law, supporting my contention. And, you know, I'm going to flip it around. I don't think there's any case law that says, as a matter of law, in order to establish a proximate cause, you have to have physical contact with the defendant. I'm not aware of any case, appellate case, that says that, especially in a situation like here where we have some direct evidence. If this was a circumstantial evidence case, and the court was trying to determine as a matter of law if it's sufficient that it's a proximate cause, yes, then I think, you know, then the issue of physical contact comes into play. Well, as you argue, the fact that she was driving around this pothole and moving around the pothole, there's direct evidence of that. Her testimony. Right, there's direct evidence of that. Yeah, yeah. Okay. And you argue that in your reply brief, that there was direct evidence. Yes. Maybe I'm missing it, but your entire first brief, I don't see anywhere where you argue there's direct evidence of anything. I see you arguing circumstantial evidence and reasonable inferences throughout the entirety of your argument. I see nothing about direct evidence. I mean, we're talking about this argument about maneuvering. Her injury was caused by maneuvering around the pothole, not hitting the pothole. I mean, you know, I think everybody fell into the trap that we were talking about her hitting the pothole because you're talking about reasonable inferences and circumstantial evidence and not direct evidence. And that's why I initially apologized. Well, I understand. But, I mean, how is your direct evidence argument not forfeited by not raising it in the initial brief and raising it for the first time in a reply brief when they don't have a chance to respond to it? It's in the initial brief because I argue that her testimony alone is sufficient evidence to establish proximate cause here. It's not the emphasis of my argument, but it is mentioned in the brief, that her testimony alone is direct evidence from which the court could find proximate cause. It creates a question of fact. It's not prominent in the argument, but it is. And that's why I started off my argument the way I did because I kind of got off the sidetrack, as I believe the trial court did too. My last point about proximate cause, as a basic part of proximate cause is a question of fact for the jury. And it's only when the evidence, as you guys know, stand for someone's judgment, when the evidence is clear and free from doubt and it's completely undisputed. Well, respectfully, there is a lot of disputed evidence here. You know, and if the jury accepts Ms. Zweig's version of the events, they could find it in her favor. The jury could, on the same hand, disregard her and not believe her and accept the defense argument, the defense theories, and they'll intervert it against her. But that's the jury's determination. You know, it's not the role of the trial court to say, I disbelieve Ms. Zweig or I don't find her credible or I don't give her testimony as much weight as the other testimony. That's an issue for the jury. And, Your Honor, I think that's why there's no case law that says avoiding a defect is sufficient to establish proximate cause. I don't think, I'm not aware of any court that says that. I don't know of any court, and I think if Your Honors find that, I think you're going to be the first court in the state of North Carolina that has ever found that. So, okay. Thank you, Your Honors. Thank you. At this time, we'll take the matter under advisement and render a decision in due course. We stand in brief recess until the next case. Thank you.